# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| STACEY C. MALOCH, | : | CIVIL ACTION NO. |
| BOP Reg. # 65951-019, | : | 2:17-CV-23-RWS-JCF |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 2:14-CR-14-RWS-JCF-1 |
| | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
|     Respondent. | : | 28 U.S.C. § 2255 |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant has filed a 28 U.S.C. § 2255 motion to vacate her sentence. (Doc. 58). **IT IS RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**.

## I.  Background

On April 1, 2014, a federal grand jury charged Movant with possession with intent to distribute methamphetamine (Count 1), possession with intent to distribute at least 50 grams of methamphetamine (Count 2), and possession of a firearm by a convicted felon (Count 3). (Doc. 1). She pled guilty to Count Two, which carries a mandatory minimum sentence of 60 months' imprisonment. (*See* Doc. 45); 21 U.S.C. § 841(b)(1)(B). On February 11, 2016, she received the 5-year minimum sentence, to be followed by 4 years of supervised release. (Doc. 51). She did not file an appeal.

The government has provided the following factual background:

> On October 1, 2013, a search warrant was executed at [Movant's] residence. (PSR ¶ 16). In a bathroom closet investigators located a firearm and a small amount of methamphetamine. (Id.). In the laundry room investigators located about 78 grams of methamphetamine, a set of digital scales, and a quantity of plastic baggies. (Id.). The PSR calculated the offense level to be level 24 based upon the quantity of methamphetamine. (PSR ¶ 24). Pursuant to U.S.S.G. § 2D1.1(b)(1), two levels were added because a firearm was possessed during the commission of the offense. (PSR ¶ 25). Three levels were subtracted based upon acceptance of responsibility. (PSR ¶ 28). The Criminal History category was determined to be III based upon [Movant's] prior convictions. (PSR ¶ 37). Final offense level 23 and Criminal History Category III resulted in a custody guideline range [of] 57-71 months.

(Doc. 61 at 2).

In her § 2255 motion, Movant raises three claims of ineffective assistance of counsel, although she has subsequently abandoned her first claim:

1. Ineffective Assistance of Counsel During Plea Negotiations. Counsel for [Movant] misrepresented the impact of a 'gun enhancement' and how it impacts her federal sentence, the time she would serv[e], the classification of a 'crime of violence' and that she wouldn't be eligible for the 'Safety Valve.' [Movant] did not have all the facts before changing her plea.

2. Ineffective Assistance of Counsel at Sentencing. Counsel failed to argue the USSG commentary notes concerning unloaded weapons. Counsel failed to point to laws and cases that support the position of the Commission in support of [Movant].

3. Ineffective Assistance of Counsel — Counsel failed to Prosecute A

2

Direct Appeal.

(Doc. 58 at 4, 5, 7; *but see* Doc. 62 (Movant's Reply) at 3 ("[Movant] concedes ground one. She is not eligible for the safety valve due to prior convictions.")).

## II. Standard of Review

A federal prisoner may file a motion to vacate her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). But it is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

## III. The Law Of Ineffective Assistance Of Counsel

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013) (applying *Strickland* standard of review to ineffective-assistance-of-counsel claim raised in § 2255 motion). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland*, 466 U.S. at 697. The analysis involves two

3

components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.*

First, a federal court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*). Second, a federal court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

To prevail on a claim of ineffective assistance, a defendant must

4

establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689. A defendant may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The Supreme Court has determined that a defendant's representations at a plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). This is because "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74.

*Connolly v. United States*, 568 Fed. Appx. 770, 770-71 (11th Cir. 2014).

### IV. <u>Movant's Three Grounds For Relief: Ineffective Assistance Of Counsel</u>

#### A. <u>Ground One: Ineffective Assistance During Plea Negotiations</u>

As noted, Movant has abandoned her ground one claim. (*See* Doc. 62 at 3).

#### B. <u>Ground Two: Ineffective Assistance At Sentencing</u>

Movant argues in support of ground two that counsel failed to object at sentencing to the firearm enhancement she received for an unloaded gun, even though

5

no ammunition was found in her home. (Doc. 59 at 11). Movant notes that because of the firearm enhancement, she is ineligible for a sentence reduction of up to one year under 18 U.S.C. § 3621(e)(2)(B) for having completed a Residential Drug Abuse Program ("RDAP") while in federal custody. (*Id.* at 12-14). In her reply brief, she argues as follows:

> [Movant] does not dispute the fact that she received a mandatory minimum because of the drug quantity. What she disputes is the nature of the gun enhancement and its impact on her federal sentence. The best way to explain this contention is that [Movant] received a mandatory minimum for the drug quantity amount. Therefore, either the judge departed downward from the PSR or the gun enhancement was not applied. The existence of the gun enhancement eliminated [Movant] from eligibility for the RDAP programs early release incentive. When counsel explained the plea agreement, the amount of time [Movant] would spend incarcerated was discussed. Counsel affirmatively stated that she would receive the benefit of RDAP. However, counsel knew [that] with a gun enhancement she was ineligible because it's considered a crime of violence. Therefore, when counsel explained her plea agreement that [she] would receive 5 year[s] and would receive 1 year RDAP credit – this was an inducement to plead guilty. . . . [Movant] would have proceeded to trial. She would have spent less time in prison because the weapon in question was unloaded and separated by areas in the house from where the drugs [were] located. Counsel coerced [Movant] by falsely claiming that this gun enhancement would have no impact on the time she would serve.

(Doc. 62 at 1-2).

Without the benefit of Movant's supporting brief (Doc. 59), the government

6

argues with respect to both grounds one and two that Movant cannot show prejudice as a result of the firearm sentencing enhancement because she was required to receive at least the statutory minimum sentence of 60 months' imprisonment, with or without the enhancement, which is the sentence that she received. (Doc. 61 at 4-7).

The Court agrees. Had Movant proceeded to trial and been convicted only on count two, she would have lost the three-level reduction in her sentencing range based on acceptance of responsibility, and she may well have received a much longer sentence had she also been convicted of being a felon in possession of a firearm, as charged in count three.[1] But even if Movant had not been convicted of the count three offense, the Court would still have applied the two-level firearm enhancement, as it did after her guilty plea, rendering Movant ineligible for the RDAP sentence reduction.[2] Under these circumstances, there is no reasonable probability that Movant

---

[1] *See Smith v. United States*, 16-CV-80726, 2017 U.S. Dist. LEXIS 41517, at *34 (S.D. Fla. Mar. 21, 2017) (noting that "possession of a firearm . . . by a convicted felon (18 U.S.C. § 922(g)(1)) [is] punishable by a *mandatory* five-year *consecutive* sentence" (emphasis added)).

[2] *See United States v. Linh Pham*, 463 F.3d 1239, 1241, 1245-46 (11th Cir. 2006) (affirming firearm sentencing enhancement despite fact that weapon was unloaded); *see also United States v. Medina*, 656 Fed. Appx. 975, 978-79 & n.1 (11th Cir. 2016) (citing *Pham* and concluding that "dangerous weapons enhancement" was appropriate "even [if] the guns were not loaded").

7

would have foregone her guilty plea and proceeded to trial, despite counsel's allegedly faulty advice, because in doing so she would have risked a much longer total sentence, with very little, if any, chance of serving less time in federal prison.

Moreover, in order to prevail on her ground two claim, Movant must show that she would not have pled guilty but for counsel's allegedly coercive promise that she would receive a one-year sentence reduction for successfully completing a RDAP. (*See* Doc. 62 at 2). But Movant acknowledged at her plea hearing that, beyond the terms of her plea agreement, not "any promise of any kind [was] made to [her] to get [her] to plead guilty," and that she had not been "threatened or forced [] to plead guilty in any way." (Doc. 64 at 8).

Thus, Movant's argument that her plea was unknowing or involuntary because counsel promised her a one-year RDAP sentence reduction, and thereby coerced her into pleading guilty, flies in the face of her acknowledgement at her plea hearing that no promise or coercion of any kind, other than the terms of her plea agreement, had induced her to plead guilty. *See Connolly*, 568 Fed. Appx. at 771 (quoting *Blackledge*, 431 U.S. at 73-74, to the effect that a defendant's statements at a plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity. The

8

subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). The Court should deny Movant's ground two claim.

### C. Ground Three: Counsel Failed To File Notice Of Appeal

In her supporting brief, Movant alleges that she "informed her attorney after sentencing to prosecute an appeal on the sentencing enhancement." (Doc. 59 at 15). In her reply brief, Movant argues as follows:

> [She] informed her attorney after sentencing to prosecute an appeal. . . . No direct appeal was filed. But for counsel's unprofessional errors the result of the proceedings would have been different and [she] would have prosecuted a direct appeal. Counsel failed to file a direct appeal as instructed – no prejudice needs to be shown.

(Doc. 62 at 2).

The government acknowledges that "[t]he Eleventh Circuit holds that 'an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se.'" (Doc. 61 at 7 (quoting *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005), which in turn cited *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000))). Again without the benefit of Movant's supporting brief, the government contends that "[h]ere, there is no allegation that defendant specifically told her attorney to appeal her sentence and he failed to do

9

so, therefore, the holding in *Gomez-Diaz* does not apply." (Doc. 61 at 7). The government argues further that

> [Movant] has not demonstrated that her attorney had a duty to consult with her about an appeal and did not do so. Given the fact that [she] was sentenced to the statutory minimum sentence, [she] cannot establish that any rational defendant would want to appeal. Obviously, there is no basis for an appeal when a defendant receives the statutory minimum. [Movant] does not contend that she reasonably demonstrated an interest in appealing her sentence. For the same reason, there would be no reason to discuss an appeal or demonstrate an interest in appealing after [she] was sentenced to the statutory minimum.

(Doc. 61 at 8).

Movant's allegation that she asked her attorney to file a notice of appeal, which he failed to do, implicates her Sixth Amendment rights as set forth in *Gomez-Diaz* and *Flores-Ortega*. In these circumstances, she should be given an opportunity to file an out-of-time appeal, even if success on appeal is unlikely. Therefore, the Court should appoint appellate counsel for Movant and, upon counsel's appearance on the record, re-enter the Judgment and Commitment Order for Movant so that counsel can then file a notice of appeal within the 14-day deadline.

## V.    **Certificate of Appealability**

A § 2255 movant must obtain a certificate of appealability ("COA") before appealing the denial of a motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C.

10

§ 2253(c)(1)(B). A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)). Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case). Because Movant has abandoned her ground one claim and there is no reasonable argument that her ground two claim has merit, a COA should not issue in this matter.

## VI.  Conclusion

**IT IS RECOMMENDED** that Movant's 28 U.S.C. § 2255 motion (Doc. 58) be **GRANTED in part** to allow her to file an out-of-time appeal, and that it otherwise

11

be **DENIED**; and that Movant be **DENIED** a certificate of appealability.

Should the Court accept this recommendation, it is further **RECOMMENDED** that the Court appoint counsel for Movant's direct appeal and re-enter her Judgment and Commitment Order to allow counsel 14 days to file a notice of appeal.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 5th day of June, 2017.

                                          /s/ *J. CLAY FULLER*
                                          J. CLAY FULLER
                                          United States Magistrate Judge

AO 72A
(Rev.8/82)